**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Robert Ruderman, | ) No. CV-09-0887-PHX-GMS |
| Petitioner, | ) |
| | ) **ORDER** |
| vs. | ) |
| | ) |
| Charles Ryan, *et al.* | ) |
| Respondents. | ) |
| | ) |

Pending before the Court is the Petition for Writ of Habeas Corpus filed by Petitioner David Robert Ruderman ("Petitioner"). (Doc. 1). On April 30, 2010, Magistrate Judge Michelle H. Burns issued a Report and Recommendation ("R & R") in which she proposed that the Court deny and dismiss the Petition with prejudice. *See* (Doc. 20). Petitioner filed Written Objections to the R & R on May 24, 2010 (Doc. 22); however, because his Objections are without merit, the Court accepts the R & R.

## BACKGROUND[1]

On September 16, 2005, after a jury trial in Arizona State Court, Petitioner was convicted on two counts: (1) sexual conduct with a minor and (2) public sexual indecency

---

[1]The R & R more fully sets forth the factual and procedural background of this case, to which neither party offered specific objections. The Court, therefore, adopts that background as an accurate recital. The facts are merely supplemented here to provide helpful context in resolving this Order.

to a minor. He was then sentenced to a presumptive life sentence on the first count and one and one half years' imprisonment on the second—with the sentences to run consecutively.

At trial, evidence was introduced that Kimberly Adams and her boyfriend, Aaron Isakson, contacted Petitioner through an on-line babysitter website in September 2004. Shortly thereafter, Petitioner began babysitting for Ms. Adams's two children, six-year old K and three-year-old M, on a regular basis at the family's Chandler apartment.

Several months later, on February 11, 2005, Petitioner agreed to stay late and watch the children until 11:30 p.m. so that Mr. Isakson could go out after work with his friends. Mr. Isakson, however, cut his evening short and returned home at approximately 9:30 p.m. When he returned to the apartment, Mr. Isakson "heard the kids playing in the bathtub" and opened the door. (Doc. 18, Ex. A at 18–19). In the mirror, Mr. Isakson saw Petitioner "standing up against the wall pulling up his pants." *Id.* at 18–19, 30–31. Petitioner had on "navy blue underwear," and was pulling up a pair of blue denim pants. *Id.* at 19, 22. According to Mr. Isakson, Petitioner's pants were "dry with patches of wet," which suggested that Petitioner had been bathing with the children when Mr. Isakson arrived home. *Id.* Shortly after this encounter, Petitioner left the apartment without speaking a word to Mr. Isakson.

After Petitioner left, Mr. Isakson contacted Ms. Adams and told her what he had witnessed. Ms. Adams, who liked Petitioner and had seen him give the children baths on two prior occasions, was not initially concerned, but she decided to ask Petitioner what happened. When Ms. Adams called Petitioner the next day, he admitted that he had taken a bath with the kids and explained that "the kids always ask him to get in the bathtub with them." *Id.* at 68. When Ms. Adams stated that it "probably wasn't a good idea" for him to take baths with the children, Petitioner indicated that it would not happen again. *Id.*

Later that day, Ms. Adams asked K, her six-year-old daughter, whether "there was anything [Ms. Adams] needed to know about [Petitioner]." *Id.* at 70. She further asked "if there had ever been any touching or any kind of physical contact, if [Petitioner] had ever touched her down there." *Id.* at 70. K responded that Petitioner had not touched her, but she then added that M, her three-year-old brother, "sucked [Petitioner's] wiener." *Id.* at 70–71,

83.

Shortly after this conversation, Ms. Adams and Mr. Isakson took K and M to the Chandler Police Department where K was interviewed. During that interview, which was recorded and played during Petitioner's trial, K explained that she was in the bathtub with Petitioner and M when Petitioner's "penis came out of his shorts." (Doc. 18, Ex. C at 12–13). K further explained that Petitioner's "wiener" was "big, long, and stuck straight up." *Id.* at 13. K then stated that M "started to suck on [Petitioner's] privates." (Doc. 18, Ex. D at 84). According to K, this happened on two separate occasions while Petitioner was babysitting the children.

Chandler Police then arranged for K and M to meet with a forensic interviewer, who specialized in interviewing young children. In this recorded interview, which was also presented at Petitioner's trial, K again stated that Petitioner took a bath with the children and that M sucked on Petitioner's penis when it came out of his blue underwear. (Doc. 18, Ex. A at 109). Three-year-old M, however, was unable to provide any meaningful information to the interviewer. (Doc. 18, Ex. B at 11–12, 16, 30).

Based on this evidence, along with Petitioner's subsequent admission to Chandler Police that he had taken a bath with the children, the jury convicted Petitioner on charges of sexual conduct with a minor and public sexual indecency to a minor. Following an unsuccessful appeal and petition for post-conviction relief in state court, Petitioner filed the instant Petition for a Writ of Habeas Corpus. Petitioner raises the following six grounds for relief:

(1) Petitioner was denied due process of law when he was convicted based on evidence insufficient to prove his guilt of the charged offenses;

(2) Petitioner was denied a fair trial by an impartial jury when he was tried by a jury on which six members either indicated they would not be impartial due to personal issues or were victims of the same type of crime charged to Petitioner;

(3) Petitioner was denied a fair trial and due process of law when the prosecutor vouched for witness testimony, misstated and mischaracterized other witness testimony so as to mislead the jury, and made remarks intended to lead the jury to convict for impermissible reasons;

(4) Petitioner was tried by a jury that was selected in violation of Equal Protection when the prosecutor used most of his peremptory challenges to strike males from the jury panel;

(5) Petitioner was denied due process of law when the State Court vacated Petitioner's preliminary hearing, a state-created right applicable to criminal defendants, without Petitioner's waiver; and

(6) Petitioner [suffered] ineffective assistance of counsel by his attorney's failure to raise appropriate objections and make appropriate motions to raise constitutional issues and preserve them for appeal.

(Doc. 1 at 6–15).

After consideration of each of these claims, Judge Burns recommended that the Court deny the Petition with prejudice. (Doc. 20). Petitioner now raises specific objections to Grounds One, Two, Three, and portions of Ground Six of the R & R.

### STANDARD OF REVIEW

Federal district courts "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].'" *Carrillo-Lozano v. Stolc*, 669 F. Supp.2d 1074, 1076 (D. Ariz. 2009) (quoting 28 U.S.C. § 636(b)(1)); *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While a district judge "must review the magistrate judge's findings and recommendations *de novo if objection is made*," *Schmidt v. Johnstone*, 263 F. Supp.2d 1219, 1225 (D. Ariz. 2003)), no such review is necessary when the parties do not raise specific objections. *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that district courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection"); *see* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a *de novo* determination of those portions of the [R & R] to which objection is made."); *Carrillo-Lozano*, 669 F. Supp.2d at 1076 (same).

### DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may not grant habeas relief unless the state's adjudication of an issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1);

- 4 -

*see Baldwin v. Reese*, 541 U.S. 27, 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). "The Supreme Court has said that § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state court decisions be given the benefit of the doubt.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Upon *de novo* review of the portions of the R & R to which Petitioner has objected,[2] the Court concludes that Petitioner's habeas claims are without merit.

## I.    Petitioner's Due Process Claim Based on Sufficiency of the Evidence is Without Merit.

A habeas petitioner must overcome a "heavy burden" to prevail on a claim that the evidence at trial is insufficient to sustain his or her conviction. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005.) As Judge Burns explained in her R & R, "there is sufficient evidence to support a conviction if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Doc. 20 at 11) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Where factual conflicts exist, it is the province of the jury to resolve those conflicts, "to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Petitioner fails to overcome the "heavy burden" required to demonstrate that the evidence at trial was insufficient to sustain his conviction. *See Juan H.*, 408 F.3d at 1274. At trial, K testified that the water level in the bathtub "kind of overflowed" when Petitioner entered the tub. (Doc. 18, Ex. D at 77–78). K then testified that M proceeded to suck on Petitioner's penis while the children and Petitioner were in the tub. *Id.* at 80–87. According to Petitioner, K's testimony is "objectively unbelievable" because it requires that the jury

---

[2]Plaintiff has not objected to Grounds Four, Five, and parts B, E, and F of Ground Six. The Court, therefore, accepts the R & R as it pertains to those claims. *See Thomas*, 474 U.S. at 149 (holding that district courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection"). Nonetheless, the Court has reviewed the R & R with respect to these claims and finds Judge Burns's recommendations to be well-taken.

believe that a three-year old child performed oral sex on the Petitioner underwater. *See* (Doc. 1; 23). Petitioner's argument, however, is belied by the record. K never testified that the sexual contact took place underwater. While she did indicate that the water "kind of overflowed" when Petitioner entered the tub, she further explained that she simply meant that the water "got higher" when Petitioner entered the tub. (Doc. 18 Ex. D at 77–78). M further testified that the water was "kind of low" when Petitioner entered the tub and that she could "see [her] toes" before he got in with the kids. *Id.* Thus, while K's testimony indicates that Petitioner displaced some of the water and caused the water level to rise, it does not establish that Petitioner's genitals were submerged when the sexual contact occurred. *See id.* Furthermore, there are no facts in the record suggesting that Petitioner was so large a man or that the tub was so small or shallow that Petitioner's entry into the tub would have caused the water level, which was below M's toes, to flow over the edge of the tub. In fact, testimony at trial established that the bathtub was large enough for two men the size of Petitioner to fit in the tub. (Doc. 18, Ex. B. at 50–54). Accordingly, in weighing the evidence and drawing reasonable inferences therefrom, the jurors could have understood K's testimony to mean that the water level simply rose when Petitioner entered the tub.

Yet, even if K's testimony is read as implying that the unlawful sexual conduct occurred underwater, the jury still could have convicted Petitioner on the basis of K's testimony. Jurors are permitted to believe all of a witness's testimony, part of it, or none of it. Thus, to the extent that it is implausible that oral sexual conduct took place underwater, the jury could have credited K's testimony that M sucked on Petitioner's penis and discredited the portion of K's testimony implying that the event occurred underwater. This is especially so given that M, a six-year-old child, provided detailed testimony regarding Petitioner's genitals and the erection that occurred when M sucked on Petitioner's penis. And while Petitioner further contends that K's testimony, without more, is insufficient to sustain his conviction for unlawful sexual conduct with a minor, "[t]he testimony of one witness . . . is sufficient to uphold a conviction." *See United States v. Larios*, 640 F.2d 938, 940 (9th Cir. 1981).

## II.     Petitioner's Claim of Juror Bias Fails.

The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury*." U.S. Const. Amend VI (emphasis added). The right to an impartial jury is further applicable to the states by virtue of the Fourteenth Amendment. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Generally, *voir dire* provides the mechanism that exposes possible biases, both known and unknown, on the part of potential jurors, and it serves to protect the accused's right to an impartial jury. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). When a juror makes statements during *voir dire* that demonstrate actual bias, the trial court must strike the juror for cause. *See United States v. Mitchell*, 568 F.3d 1147, 1151 (9th Cir. 2009). In cases where neither counsel requests that the juror be dismissed for cause, a trial court has a duty to dismiss the juror *sua sponte* where "the evidence of partiality before the [trial] court" is highly "indicative of impermissible juror bias." *Id.*

Courts in the Ninth Circuit analyze claims of "'juror bias under two theories—actual bias and implied bias.'" *Id.* (quoting *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008), *cert. denied*, 128 S. Ct. 2973 (2008)); *see Fields v. Woodford (Fields I)*, 309 F.3d 1095, 1105–06 (9th Cir. 2002) (considering both actual bias and implied bias). Petitioner claims that his jury was biased under both theories. The Court, however, concludes that the record does not support Petitioner's claim.

### A.     Actual Bias

As the Ninth Circuit recently reiterated, "[A]ctual bias is, in essence, 'bias in fact—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Mitchell*, 568 F.3d at 1151 (quoting *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000)). Actual bias, therefore, "is found where 'a prospective juror states that he [cannot] be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view.'" *Id.* (quoting *Fields v. Brown (Fields II)*, 503 F.3d 755, 767 (9th Cir. 2007) (en banc)). In *Gonzales*, for

example, a juror serving in a narcotics trial indicated that her ex-husband's drug dealing had been extremely painful to her and the primary cause of the couple's divorce. 214 F.3d at 1113. When the trial court inquired three times whether she could put her experience aside and serve fair and impartially, she equivocated and never affirmatively stated that she would be impartial. *Id.* On appeal, the Ninth Circuit held that the juror's statements regarding her inability to be impartial, combined with "the similarity between her traumatic familial experience and the defendant's alleged conduct," required reversal of the Defendant's conviction based on the juror's bias. *Id.* at 1114.

By contrast, in *Mitchell*, another panel of the Ninth Circuit concluded that "evidence of juror bias was insufficient" to establish actual bias. 568, F.3d at 1152. In that case, which also involved narcotics, a juror indicated that her uncle had been killed by a drug dealer. *Id.* at 1148. When the juror was asked "do you think that what happened [to your uncle] would affect you, in any way, in being a fair juror in this case?" the juror responded that she did not think so. *Id.* After additional questioning from the court, she further indicated, "no, I'll be fine. No. actually, I'm fine." *Id.* And while the juror later indicated that she would have a hard time putting her uncle's murder out of her mind, the Ninth Circuit rejected any claim for juror bias because "none" of the juror's subsequent statements "returned to the theme of *whether she could be a fair juror*[.]" *Id.* The Court further noted, "[i]n response to the only question directly inquiring into her ability to be . . . impartial," the juror indicated that her experience "would not affect her impartiality." *Id.* Similarly, in *Fields II*, the Ninth Circuit rejected a claim of actual bias, even though the juror's wife had been a victim of a traumatic assault quite similar to the crime of which the defendant had been accused. 503 F.3d at 764–65. The court held that the juror was not actually biased because, when the trial judge asked if the juror would be fair and impartial, he honestly indicated that he would. *Id.* at 764, 767.

In this case, Petitioner asserts that six members of his jury were actually biased based on their answers to questions during *voir dire*. According to Petitioner, the trial court should have stricken the following members of the jury panel *sua sponte* on the basis of actual bias:

Juror # 1 (panel # 4), Juror # 3 (panel # 7), Juror # 4 (panel # 9), Juror # 6 (panel # 21), Juror # 10 (panel # 33), and Juror # 11 (panel # 35). A thorough review of record with respect to each of these jurors, however, indicates otherwise.

## 1.    Juror # 1

The record does not support Petitioner's claim of actual bias with respect to Juror # 1. During *voir dire*, Juror # 1 revealed that she had a four-year old daughter, which would make it "difficult for [her] to participate in this case because it . . . involve[d] children testifying." (Doc. 18, Ex. Q at 40–41). Juror # 1 further indicated that she had a friend who had been molested as a child. *Id.* Based on her experiences, Juror # 1 further stated that "an emotional response" might make it "difficult" for her "personally" to "listen" to evidence of child molestation. *Id.* The following exchange with Petitioner's counsel during *voir dire*, however, clarifies what Juror # 1 meant when she indicated that she might have an emotional response to this type of evidence.

| | |
|---|---|
| Counsel: | You were worried about the emotional response that you would have sitting in this trial. Is that what I heard . . . ? |
| Juror # 1: | An emotional response from the standpoint of all of us, to see kids struggle . . . . I think we all respond that way . . . . [I]t was about me, not necessarily about my ability to be . . . an impartial juror. But just . . . I probably would . . . struggle with [a case involving harm to children]. I had bad feeling last night. It was hard for me to sleep last night. |
| Counsel: | Okay. Because of the fear you were going to become a member of this jury? Is that— |
| Juror # 1: | No. No. Because there's so much—you go back to Michael Jackson.[3] So much of this that [is] on television and inundating us. My response to any of it, . . . just being brought up in the news, because it's so close to home, having a kid, a |

---

[3]Around the time of Petitioner's 2005 trial, Michael Jackson made headlines when he was acquitted on charges of child molestation. *See* John M. Broder & Nick Madigan, *Michael Jackson Cleared After 14-Week Child Molesting Trial*, N.Y. Times, June 14, 2005 *available at* http://www.nytimes.com/2005/06/14/national/14jackson.html?_r=1 &pagewanted=all.

|              |          | child you know in that situation just—it gets to me. |
|--------------|----------|-----|
|              | Counsel: | Okay. |
|              | Juror # 1: | But that is not to suggest it doesn't get to every other person in this room. I just maybe raised my hand first. |
|              | Counsel: | Okay. That's kind of my question. I'm not asking you to extract your emotions before you come sit in that jury chair. But what I'm saying is[,] I wonder because you mentioned this specifically, whether you would have such a strong emotional response—you mentioned not sleeping well last night—that this would somehow prevent you from focusing on the evidence. |
|              | Juror # 1: | No, it wouldn't. Actually, after answering the question, I realized that I probably should have listened to the judge a little bit more before I answered that, because probably what I was responding to was not what he was asking. |
|              | Counsel: | Okay. |
|              | Juror # 1: | It was emotional. That was what my response was. You know it was emotional. |

(Doc 18, Ex. D at 16–18).

These statements do not establish actual bias. Juror # 1 never stated that she "c[ould] not be impartial," and a close review of her statements reveals that she never " respond[ed] equivocally" to questions about whether "[s]he could be fair and impartial" in this case. *See Gonzalez*, 214 F.3d at 1112. Instead, much like the juror in *Mitchell*, who indicated that she would have a hard time putting her uncle's murder out of her mind, Juror # 1 merely indicated that she might have a hard time listening to testimony about a sexual crime involving a young child. *See* 568, F.3d at 1152. And while this Juror initially stated that it would be difficult for her to listen to the evidence, she later indicated that this would not affect her ability to be impartial. (Doc. 18, Ex. D at 17). At most, Juror # 1's comments during *voir dire* suggest some ambiguity about her ability to be impartial. Ambiguous statements, however, are insufficient for Petitioner to carry his burden of demonstrating that the trial court committed reversible error when it failed to strike Juror # 1 *sua sponte* for bias.

*See Mitchell*, 568, F.3d at 1151 (observing that a criminal defendant who fails to challenge a potentially biased juror for cause bears the heavy burden of showing that the "evidence of partiality before the [trial] court was *so indicative* of bias that the court was obliged to strike" the juror *sua sponte*) (emphasis added); *see also Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) ("A juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias.").

### 2. Jurors # 3, # 4, # 6, # 10, and # 11

The record also lacks evidentiary support for Petitioner's claim that the remaining jurors were actually biased. During *voir dire*, the trial judge asked each juror whether he or she had "ever been the victim of any kind of crime." (Doc. 18, Ex. Q at 61). In response to this question, Juror # 3 stated that she had been "molested as a kid[,]" and that she had a very clear memory of the event. *Id.* at 64, 66. Similarly, Juror # 4 indicated that she "was sexually molested when [she] was a child." *Id.* at 63. She further stated that she had "blocked" the event, which happened on one occasion, "out of [her] mind." *Id.* Juror # 6 also answered affirmatively to the trial judge's question, indicating that she had a "pretty clear memory" of being molested when she was nine-years old. *Id.* at 65. Lastly, Juror # 10 indicated that she had been "raped when [she] was sixteen and assaulted when [she] was twenty-two," *id.* at 70, and Juror # 11 indicated that she too had been "a victim of molestation," (Doc. 18, Ex. D at 35).

After the jurors gave their answers to this inquiry, the trial judge posed the following question to each juror who had affirmatively stated that he or she had been a victim of a prior crime:

> Those of you who answered yes to this last question, do any of you feel that you can't put your experiences aside, the emotional response that you have, and the mental images that you have of what may have occurred[?] . . . [Are] there any of you who feel you cannot do that sufficiently so that you make a decision based on . . . the facts of this case[] and the law that I give to you? Is there anybody who feels they're not capable of doing that?

(Doc. 18, Ex. Q at 73). In response, none of the aforementioned jurors indicated that they

would base their decision on their experiences as victims of sexual crimes, rather than the facts of Petitioner's case. *Id.* at 76. Later in *voir dire*, upon additional questioning about being molested or raped, Jurors # 4, # 10, and # 11 affirmatively reiterated that, despite their experiences, they would listen to the facts and evidence and render a fair and impartial verdict. (Doc. 18, Ex. D at 31–32, 38–40).

As with Juror # 1, Petitioner fails to set forth facts demonstrating that these jurors were actually biased. None of these jurors stated that they "c[ould] not be impartial," and none "respond[ed] equivocally" to questions about whether "[t]he[y] could be fair and impartial" in this case. *See Gonzalez*, 214 F.3d at 1112. Instead, each of these jurors indicated to the trial court that their experience as victims would not impact their ability to render an impartial verdict. And while Jurors # 3 and # 6 were not questioned individually, and though they never affirmatively stated that they would be impartial, these jurors did not make any statements indicative of actual bias and their response to the trial court's *specific* question about bias based on past experience as victims suggests that they were not actually biased in this case. *See Matthews v. Simpson*, 603 F. Supp.2d 960, 1026 (W.D. Ky. 2009) (finding that a juror's silence was indicative of impartiality when the trial court asked the jurors whether their prior experiences might impair their ability to follow the law as instructed by the court).; *Cf. Johnson v. Armontrout*, 961 F.2d 748, 754 (8th Cir. 1992) (holding that "an ambiguous silence by *a large group* of venire persons to a *general* question about bias [does not] support a finding" of impartiality where these jurors had *previously* indicated that they might be biased) (emphasis added). Accordingly, the trial court did not err when it failed to strike jurors # 3, # 4, # 6, # 10, and # 11 *sua sponte* for bias. *See Mitchell*, 568, F.3d at 1151.

### B. Implied Bias

In extreme cases, juror bias can be implied or presumed from the circumstances of the case. The doctrine of implied bias, however, is reserved for those "exceptional" circumstances that "leav[e] serious question whether the trial court . . . subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice." *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring). For instance, bias may be

presumed when "the juror is an actual employee of the prosecuting agency," where "the juror is a close relative of one of the participants in the trial or the criminal transaction," or where the "juror was a witness or somehow involved in the criminal transaction." *Id.* at 222; *see also United States v. Nell*, 526 F.2d 1223, 1229 n. 8 (5th Cir. 1976) (holding that implied bias arises only when "the circumstances point *so sharply* to bias in a particular juror that even his own denials must be discounted") (emphasis added). Several circuit courts have also "presumed bias in cases where the prospective juror has been the victim of a crime or experienced a situation similar to the one at issue in the trial." *Hunley v. Godinez*, 975 F.2d 316, 319 (7th Cir. 1992) (implying bias where several jurors were victims of a robbery that was "*profoundly* similar" to a robbery for which the defendant was on trial) (emphasis added); *see Jackson v. United States*, 395 F.2d 615, 617–18 (D.C. Cir. 1968) (presuming bias where a juror had been a participant in a "love-triangle" analogous to the one in issue at trial); *United States ex rel. De Vita v. McCorkle*, 248 F.2d 1, 8 (3d Cir. 1957) (en banc) (holding that bias can be imputed where a juror was the victim of a robbery similar to the robbery charged against the defendant).

Because implied bias is only found in the extreme and extraordinary case, however, there is no *per se* rule that a victim of a particular criminal act cannot be juror in a case involving a quasi-similar offense. *See Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991) ("Prudence dictates that courts . . . should hesitate before formulating categories of relationships which bar jurors from serving in certain types of trials."). This is so, even in cases that involve crimes that generate a strong emotional response, such as molestation and rape. *See Fields II*, 503 F.3d at 775 n. 12 ("[T]o hold that a rape victim can never be an impartial juror in a rape trial . . . would 'insult not only all rape victims but also our entire jury system, which is built upon the assumption that jurors will honestly try to live up to the sanctity of [their] oath.'") (quoting *Gonzales v. Thomas*, 99 F.3d 978, 989 (10th Cir. 1996)); *cf. United States v. Miguel*, 111 F.3d 666, 673 (9th Cir. 1997) (holding that the trial court, in a case involving sexual abuse, did not err when it failed to excuse jurors for cause based on statements that they had been victims of child

- 13 -

molestation). Accordingly, "[r]ather than presume bias in any rape [or molestation] victim who is called as a prospective juror in a rape [or molestation] trial," courts must "focus[] more closely on the particular juror's experience." *See Thomas*, 99 F.3d at 990.

Because "each [implied bias] case must turn on its own facts[,]" *Smith*, 455 U.S. at 222 (O'Connor, J., concurring), courts should "look to how the experience affected the juror and what similarities exist between the juror's experience and the case at trial." *Thomas*, 99 F.3d at 990. "[T]he inquiry [for implied bias] is 'whether an average person in the position of the juror in controversy would be prejudiced.'" *Mitchell*, 568 F.3d at 1151 (citing *Gonzales*, 214 F.3d at 1112). To make this determination, courts consider the following: "the similarity of the [juror's] experience to the facts of the case, the nature of the experience, its contemporaneous and continuing impact, . . . how the individual handles it, and so forth." *See Fields II*, 503 F.3d at 775.

The facts of this case fall short of the extreme and extraordinary circumstances necessary to presume bias. According to Petitioner, bias can be implied because five of the jurors who convicted him had been victims of rape or child molestation. Nevertheless, while these jurors' experiences might suggest a *possibility* of bias, "[i]t cannot be said" as a matter of law "that the average person in [the position of these jurors] would be highly unlikely to remain impartial whether he [or she] acknowledged it or not." *See Fields II*, 503 F.3d at 774. To presume bias in this case would be to hold that a victim of sexual molestation can never be an impartial juror in a case involving molestation. Such an approach would "'insult not only all . . . victims [of molestation] but also our entire jury system." *See id.* at n. 12. Instead, as in *Thomas*, the more appropriate inquiry is whether these "experience[s] affected the juror[s]" and whether there are sufficient "similarities . . . between" these juror's experiences and Petitioner's offense. *See* 99 F.3d at 990.

Petitioner has not presented any facts suggesting that the jurors' experiences affected them in a way that prevented them from being impartial in this case. Indeed, while some of these jurors stated that they had a clear memory of being molested,, none indicated that their experience would cause them to be biased, and there is no evidence that any of these jurors

intentionally withheld facts regarding the crimes committed against them. *See* (Doc. 18, Ex. Q at 64–66). Instead, each of the jurors at issue volunteered information regarding their victimization and indicated that they would be impartial. *Id.* at 76; *see Fields II*, 503 F.3d at 773 (noting that bias is less likely to be implied when a juror is "forthcoming" about his life experiences on *voir dire*); *Gonzales*, 214 F.3d at 1113 (recognizing that a juror's statements pertaining to his ability to be impartial may also "be relevant to a determination of implied bias").

Additionally, there are no facts in the record indicating that these jurors were victimized in circumstances so *profoundly* similar to the facts of this case that an average person in the position of these jurors "would be prejudiced." *See Mitchell*, 568 F.3d at 1151. Nothing in the record indicates that these jurors were molested by their babysitter, that their molesters' actions involved same-sex attraction, that the sexual contact occurred in the presence of other children or persons, that the molestations involved oral sex, or that the jurors' molestations were otherwise substantially similar to Petitioner's offense of conviction. There also are no facts indicating that their experiences had a contemporaneous or continual impact on the jurors or that these jurors handled the situation in a way that points "sharply to bias[.]" *See Nell*, 526 F.2d at 1229 n. 8.

## III. Petitioner's Prosecutorial Misconduct Claim Does Not Merit Habeas Relief.

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'" *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (brackets omitted) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). In other words, "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned[,]'" *see Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (quoting *Darden*, 477 U.S. at 181), those remarks must have had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Sechrest v. Ignacio*, 549 F.3d 789, 808 (9th Cir. 2008) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993)). "Only if the record demonstrates that the jury's decision was substantially influenced by the error or there is 'grave doubt about whether an error affected a jury' will

[a petitioner] be entitled to relief." *Id.* (quoting *Hegler v. Borg*, 50 F.3d 1472, 1478 (9th Cir. 1995) (quotation marks omitted)).

In his Written Objections to Judge Burns's R & R, Petitioner points only to two instances of prosecutorial misconduct.[4] Neither objection has merit. First, Petitioner claims that the prosecutor's closing argument mischaracterized the testimony of Ms. Adams, the victims' mother. During closing argument, the prosecutor stated the following:

> Back to February 3rd, the weekend, you recall Kimberly Adams said it was really the weekend that I was hiring this guy who was accepting half the amount of money than any other weekend babysitter would accept . . . . He was taking advantage of people who cannot otherwise [afford] a babysitter . . . . He told them he liked to help struggling parents, help them out when they needed help. He accepted half the pay to get himself alone in a bathtub with boys, with children.

(Doc. 18, Ex. S at 36–39). Contrary to Petitioner's claim, this statement was not improper. At trial, Ms. Adams testified that when she looked for babysitters, she interviewed four other babysitters, each of whom each quoted her a price of $200. (Doc. 18, Ex. A at 58). Given that Petitioner offered to provide virtually identical services for a price of $120, the prosecutor's statement was a reasonable inference based on Ms. Adams's testimony. *See Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) ("Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom.") (quotation omitted); *Bible v. Schriro*, 497 F. Supp.2d 991, 1026 (D. Ariz. 2007) ("[C]ounsel are given wide latitude during closing argument.") (citing *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997)).

Petitioner next argues that the prosecutor committed misconduct during closing argument by alluding to evidence that was not introduced at trial. Specifically, Petitioner challenges the following portion of the Prosecutor's closing argument:

---

[4]In his habeas petition, Petitioner points to several additional statements by the prosecutor that Petitioner contends violated his right to a fair trial. Judge Burns, however, dispensed with these contentions in her R & R, and Petitioner does not object to the R & R's findings.

> [Defense counsel] asks you to think of the fate of [Petitioner]. *I ask you, ladies and gentlemen, what about the fate of these children?* Luckily we caught this. Luckily Aaron Isakson came back. If [K's] answers were suggested, as [Defense Counsel] suggests, why were they different? Why when I asked her on the stand what happened, did she not say what she had said to the interviewers? Because they weren't suggested by the interviewers. They were not suggested by her mother. This isn't [K's made-up] story. This is what she saw. This is her observation of what happened to her younger brother . . . . *And maybe it is very true that we didn't get the whole story of what happened in the bathtub, but we got something that happened with details that she would not otherwise know.* There's been no evidence at all that she's seen photographs, that she's seen other naked people. You recall the evidence. Where would she get that detail . . . unless she actually saw that?

(Doc. 18, Ex. S. at 45–46) (emphasis added to reflect Petitioner's specific objections). Contrary to Petitioner's claim, there is nothing to suggest that these statements "'so infect[ed] the trial with unfairness as to make [Petitioner's] resulting conviction a denial of due process.'" *See Davis*, 384 F.3d at 644 (quoting *Darden*, 477 U.S. at 181). Instead, as Judge Burns explained in her R & R, "[T]he prosecutor was merely attempting to respond to Petitioner's proffered defense and argument, which attacked K's credibility and attacked the inconsistency of her statements and testimony, by arguing that [K's] testimony was believable [and] supported by the evidence." (Doc. 20 at 19). There is simply nothing in the record suggesting these remarks had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *See Sechrest*, 549 F.3d at 808 (quoting *Brecht*, 507 U.S. at 622).

Yet, even if these statements were somehow prejudicial to Petitioner, any potential prejudice was sufficiently minimized by the trial court's final jury instructions, which explicitly stated that "statements by counsel are not evidence." (Doc. 18, Ex. S at 14–16). The trial court further instructed the jury that its verdict must be based solely on the evidence and not based on "sympathy, bias, or prejudice." *See Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) ("[B]efore the lawyers made their closing arguments, the court instructed the jury that "[s]tatements made by the attorneys during trial are not evidence,' and that the jury 'must not be influenced by mere sentiment, conjecture, sympathy, passion, prejudice, public

- 17 -

opinion or public feeling.' We presume that the jury followed those instructions.") (citation omitted). Petitioner points to nothing in the record that overcomes the presumption that the jury in this case followed the judge's instruction to make its decision based on the evidence presented at trial. *See id.*

**IV.    Petitioner's Claim of Ineffective Assistance of Counsel Fails on the Merits.**

To prove a violation of the Sixth Amendment's requirement of effective assistance of counsel, a habeas petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness, and (2) but for his attorney's errors, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). With respect to *Strickland's* first prong, the relevant inquiry is not what defense counsel could have done, but rather, whether the decisions made by defense counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Evans v. Lewis*, 855 F.2d 631, 636 (9th Cir. 1988) (quoting *Strickland*, 466 U.S. at 694). As both prongs of the *Strickland* test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance claim be denied. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Petitioner raises three objections to Judge Burns's conclusion that counsel was not constitutionally defective: (1) Petitioner's counsel was ineffective when he failed to challenge the sufficiency of the evidence; (2) counsel's failure to challenge biased jurors constitutes ineffective assistance; and (3) Petitioner's counsel was ineffective for failing to object to prejudicial prosecutorial statements. As discussed throughout this Order and the R & R, all of Petitioner's arguments underlying his ineffective assistance claim (i.e. Petitioner's sufficiency of the evidence claim, his juror bias claim, and his prosecutorial misconduct claim) are without merit. Accordingly, Petitioner's attorney was not ineffective for failing

to raise objections based on these arguments. *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (holding that counsel's failure to raise a meritless argument does not constitute ineffective assistance) (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)); *see also Evans*, 855 F.2d at 636 (noting that prejudice requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (quoting *Strickland*, 466 U.S. at 694). To be sure, it is somewhat troubling that Petitioner's counsel failed to challenge or question several jurors who indicated that they had been victims of sexual crimes; nevertheless, his attorney's failure was not prejudicial because Petitioner fails to present facts demonstrating that counsel's alleged error resulted in a biased jury. *See Fields II*, 503 F.3d at 776 (rejecting an ineffective assistance claim based on counsel's failure to challenge jurors for bias where the petitioner failed to demonstrate that the jurors were biased).

## V.  Petitioner's Request for an Evidentiary Hearing is Denied.

As a final matter, the Court finds that Petitioner has not set forth a basis for an evidentiary hearing on his claims. To obtain an evidentiary hearing on a habeas claim, a state prisoner is required to both diligently pursue that claim in state court and allege a colorable claim for relief. *West v. Ryan*, ___ F.3d ___, 2010 WL 2303337, at *6 (9th Cir. 2010). Petitioner meets neither of these requirements.

### A.  Diligence

Under AEDPA, a state prisoner is not entitled to an evidentiary hearing when he or she fails to develop the factual basis of a claim in state court. 28 U.S.C. § 2254(e)(2). Failure to develop the factual basis of a claim is established when "there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Diligence, under this standard, "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Id.* at 435. "[A]t a *minimum*," diligence requires that "the prisoner . . . seek an evidentiary hearing in state court in the manner prescribed by state law."

*Id.* at 437 (emphasis added). A petitioner who fails to exercise diligence will be entitled to an evidentiary hearing only when his claim raises a new issue of constitutional law, made retroactive on collateral review by the Supreme Court, or where efforts to discover the facts underlying the claim would have been in vain. *See* 28 U.S.C. § 2254(e)(2)(A). Additionally, a lack of diligence will not be excused unless the facts underlying the claim are sufficient to establish actual innocence. *See id.* at § 2254(e)(2)(B)

Here, Petitioner has not diligently pursued the facts underlying his claims. Under Arizona law, Petitioner should have presented his sufficiency of the evidence claim, his claim of juror bias, and his claim for prosecutorial misconduct on appeal. *See* Ariz. R. Crim. P. 31, 32.2. He did not. Moreover, under Arizona Rule of Criminal Procedure 24.1(d), Petitioner should have raised his claim of juror bias and should have requested a hearing on that issue through a post-trial motion. *See* Ariz. R. Crim. P. 24.1(d). And while Petitioner arguably presented his claim of ineffective assistance in the manner prescribed under Arizona law, the facts underlying that claim, at least as they pertain to his attorney's failure to challenge jurors for bias, were not diligently developed because Petitioner failed to raise the issue of bias in a post-trial motion following his conviction. *See id.* Petitioner, therefore, failed to give the state courts the necessary opportunity to make additional factual findings related to his claims.

Petitioner's failure to diligently pursue his claims cannot be excused under the AEDPA. There is nothing to suggest that Petitioner's claims present a new issue of constitutional law, made retroactive on collateral review by the Supreme Court. *See* 28 U.S.C. § 2254(e)(2)(A). Nor would diligent efforts to pursue Petitioner's claims have been in vain. *See id.* Indeed, the factual basis upon which Petitioner asserts juror bias appears to have been available to Petitioner from the very first day of his trial. Further, the factual basis underlying Petitioner's claims do not demonstrate actual innocence. *See id.* at § 2254(e)(2)(B).

**2.  Colorability**

Even if Petitioner had been diligent in pursuing the factual basis for his claims in state

court, he fails to allege facts that would entitle him to relief. A habeas petitioner presents a colorable claim when he or she "(1) alleges facts, which, if proven, would entitle him to relief; and (2) shows that he did not receive a full and fair hearing in the state court." *Houston v. Schomig*, 533 F.3d 1076, 1083 (9th Cir. 2008) (citing 28 U.S.C. § 2254(e)(2); *Alberni v. McDaniel*, 458 F.3d 860, 873 (9th Cir. 2006) *cert. denied*, 549 U.S. 1287 (2007)). To receive an evidentiary hearing, however, a habeas petitioner must establish what additional facts could be developed and explain how those facts might have affected the outcome of his trial. *See Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999). In other words, a petitioner must present *specific* facts that would entitle him to relief. *Tilcock v. Budge*, 538 F.3d 1138, 1146 (9th Cir. 2008) (holding that a habeas petitioner must allege "specific facts" to receive an evidentiary hearing)*; see Gonzalez v. Knowles*, 515 F.3d 1006, 1014 (9th Cir. 2008) (holding that mere speculation, unsupported by facts, is insufficient to merit an evidentiary hearing on federal habeas review).

A review of Petitioner's Habeas Petition and his Written Objections reveals that Petitioner does not allege specific " facts, which, if proven, would entitle him to relief." *See Houston*, 533 F.3d at 1083. Instead, each of Petitioner's arguments relies exclusively on the record at trial. With respect to Petitioner's juror bias claim, for example, Petitioner does not allege any additional facts, let alone specific facts, that would entitle him to relief. *See Rich*, 187 F.3d at 1067; *Tilcock*, 538 F.3d at 1146. To grant an evidentiary hearing based on Petitioner's speculation that additional evidence will show bias would allow Petitioner to conduct a "fishing expedition" on his claim. *See United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) ("District courts have 'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys."); *Rich*, 187 F.3d at 1067 (noting that petitioners are not entitled to go on fishing expeditions in search of evidence that may or may not support their claims).

## CONCLUSION

Having determined that Petitioner fails to state a claim for habeas relief,

**IT IS THEREFORE ORDERED:**

1.     Judge Burns's R & R is **ACCEPTED** as set forth in this Order. *See* (Doc. 20).

2.     Petitioner David Robert Ruderman's Petition for Writ of Habeas Corpus is **DENIED** with prejudice. *See* (Doc. 1).

3.     A certificate of appealability is **GRANTED** with respect to Petitioner's claim of juror bias and his claim for ineffective assistance of counsel based on his attorney's alleged failure to challenge biased jurors.

4.     A certificate of appealability is **DENIED** with respect to Petitioner's remaining claims because he has not made a substantial showing that the state courts' decision on these claims resulted in the denial of a constitutional right.

5.     The Clerk of Court is directed to **TERMINATE** this action.

DATED this 13th day of July, 2010.

_____
G. Murray Snow
United States District Judge